KOUW v. COBURN.

1. PRINCIPAL AND AGENT—POWER OF ATTORNEY—CONTRACT WITH THIRD PARTY.

Power of attorney, given by owner of vendee's interest under land contract in default to agent "to hire others if necessary to secure a settlement" as to property wanted for highway purposes, under the circumstances, authorized contract with third party reciting that as latter had lost to said owner about $5,000 on a prior option deal, owner agreed to take $2,000 net, leaving agent and third party to divide the balance of $8,000 received in settlement.

2. FRAUD—EVIDENCE—CONTRACTS—PRINCIPAL AND AGENT.

Evidence *held*, to show no fraud against owner of vendee's interest in land in transaction with State highway department where agent, acting under power of attorney, agreed with third party that, as latter had lost to owner about $5,000 on a prior option deal, owner would take $2,000 net for his interest and he knew of said contract at time of settlement with State when $8,000 was paid for said interest.

3. CONTRACTS—PUBLIC POLICY—EQUITY.

Contract for division of amount received in settlement from State for land for highway purposes between owner, his agent and third party negotiating settlement *held*, not void as against public policy or so unconscionable as to be void in equity.

Appeal from Ottawa; Spier (James E.), J., presiding. Submitted October 11, 1933. (Docket No. 46, Calendar No. 37,285.) Decided December 19, 1933.

Bill by Isaac Kouw against Corie C. Coburn and Frank D. McKay for an accounting and for other relief. Bill dismissed. Plaintiff appeals. Affirmed.

*William J. Branstrom* and *Harry D. Reber,* for plaintiff.

*Albert McClatchey,* for defendant Coburn.

*Linsey, Shivel & Phelps,* for defendant McKay.

NORTH, J. The defendants and appellees herein secured from the State highway department $8,000 as consideration for a conveyance of plaintiff's interest in a parcel of property in Grand Rapids which property was involved in widening, extending and improving a street. Of this amount $2,000 was paid to plaintiff; and under claim of right $6,000 was retained by defendants. Plaintiff, asserting this was in fraud of his rights, filed a bill for an accounting. By decree in the circuit court plaintiff's bill of complaint was dismissed and he has appealed.

A carefully prepared and helpful opinion was filed by the circuit judge which we quote in part:

"A rather detailed review of the entire transaction is necessary for an understanding of the status of the parties concerned. The plaintiff is a real estate operator of considerable experience extending over 20 years. It appears that in 1926, or thereabouts, the plaintiff received from defendant Frank McKay the sum of around $5,000, according to plaintiff's testimony, on an option deal covering lake front property. For some reason not shown in this suit the option was allowed to lapse.

"The next transaction between the parties appears to be the deal in 1932 in this suit. In the early part of 1931 Isaac Kouw, plaintiff, was the owner of an interest, as purchaser under land contract, of certain property in the city of Grand Rapids, which was needed for the completion of a State highway. The contract for purchase was approximately for $100,000 and Mr. Kouw's interest in the contract was approximately $25,000. In February, 1931, the plaintiff entered into an agreement with his present attorney, William J. Branstrom, whereby Mr. Branstrom was to handle all litigation pertaining to plaintiff's interest in the property and endeavor to make some settlement with the State, the State having apparently made some optional agreement with the owners and vendors under the contract. The agreement with Branstrom was in writing and called for the payment of one-third of the net sum that might be recovered from the State or the owners in said matter. There also appears to have been some agreement that defendant Corie Coburn was to receive one-sixth of anything realized from the transaction, working with Mr. Branstrom on the matter.

"Various dealings were apparently had between Branstrom and the State. During the year it would appear that the State settled with Schmied, the

owner and contract vendor of the property, for the sum of $36,000 (should be $38,000), said settlement being admittedly an exceptionally low figure. * * * The State thus obtained the deed and title to the property and was proceeding against plaintiff Kouw before the circuit court commissioner to forfeit his contract and regain possession of the property without any payment to him for his interest, he being some $15,000 to $17,000 behind in his contract payments, and being in no position to pay up. The best offer that Mr. Branstrom or Coburn were able to get from the State under these circumstances was the sum of $500, although both plaintiff and his then attorneys claimed at that time, and still claim at the time of this suit, that his equity in the property was actually in the neighborhood of from $15,000 to $25,000.

"The proofs show that the property in question was assessed at $65,000 and taxes were paid on this basis. One of the State's own appraisers, Mr. Alexander, appraised this property at $65,825. The State paid Mr. Schmied, the owner and contract vendor, the sum of $36,000 (should be $38,000) for his interest in the property, subject to the interest of Mr. Kouw. Taking as a basis the State's appraisal, and deducting the amount paid the legal owner, Mr. Schmied, would leave a balance of around $29,000 (should be $27,000) as the claimed equity and value of Mr. Kouw's interest in the property. It was under these circumstances, and around the 19th of July, 1932, Mr. Coburn, representing Mr. Kouw, approached Mr. McKay and asked Mr. McKay if he would be interested in acting as their agent in negotiating the sale of this equity to the State, on a 25 per cent. arrangement, Coburn representing the equity to be around $29,000 (should be $27,000). Defendant McKay remarked that he might be interested if this deal would give him an opportunity to get back the $5,000 which he had turned over to Kouw some six years before, and advised Coburn that he would look into it and let him know.

"Mr. McKay advised Mr. Coburn that until Coburn had some authority from the plaintiff to handle the transaction there would be no use in proceeding. Mr. Coburn procured from Isaac Kouw and his wife the power of attorney duly executed on July 20, 1932, before a notary public, which constituted and appointed Corie C. Coburn of Detroit, Michigan, as true and lawful attorney for Kouw, in his place and stead, 'to handle the matter which I have against the State of Michigan, * * * *to hire assistant counsel should he require it, to hire others if necessary to secure a settlement with the State and city and county, to institute suit if deemed necessary, to make contracts with attorneys and such other assistants if deemed necessary by him to secure a speedy settlement upon such terms and conditions as to him shall seem mete,* to receive the moneys collected for said damages and to pay the said attorneys and assistants, according to any contract he may see fit to make in that reference, giving and granting unto Corie C. Coburn, said attorney, full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as we might or could do if personally present, with full power to substitution and revocation, hereby ratifying and confirming all that my said attorney or his substitute shall lawfully do or cause to be done by virtue hereof.'

"On July 21, 1932, defendant Coburn wrote a letter to Mr. McKay, sending a copy of the same to plaintiff Kouw, stating that he would pay 25 per cent. of the moneys received to Mr. McKay.

"Mr. McKay, after investigating the matter of the highway department, found the representations made by Mr. Coburn as to the status of the property were untrue and in a letter dated July 27, 1932, to Mr. Coburn, informed him that Kouw, or someone for him, had already offered to settle with the

State for $8,000 and that the only offer made by the State up to that time had been $500, and in his letter stated as follows:

" 'I had hoped to be able to make myself whole on the deal I mentioned to you last week in which Kouw secured $6,500 from myself and Fred Pantlind in lake frontage, but inasmuch as this will now be impossible I cannot accept the offer of 25 per cent. of what is available, and I herewith withdraw any acceptance I might have made to your 25 per cent. offer.

" 'I would suggest that you start the suit you threatened against the State as I am satisfied you are facing a pretty tough proposition and, that 25 per cent. of what you might obtain would not interest me.'

"Following this, numerous conversations took place between Mr. Coburn and McKay in which dealings and by various instruments in writing, executed at different times, plaintiff Kouw agreed to accept the sum of $2,000 net out of the transaction.

"Exhibit 'C,' dated August 8th, and signed by Isaac Kouw, together with a similar order signed by Isaac Kouw and his wife, dated September 3d, both of which read as follows:

" 'Holland, Michigan,
August 8, 1932.

" 'Corie C. Coburn:

" 'The inclosed order to deliver quitclaim deed * * * and power of attorney to cash any check you may receive therein is delivered to you upon the understanding and agreement that you are to pay me $2,000 net out of said transaction, you to take care of William J. Branstrom, attorney, in such amount as you may be able to adjust any claim for attorney fees he may have in said matter as per statement and agreement.'

"An agreement identical with the above, to accept $2,000 net out of the transaction, and under date of September 3d, was also delivered to Mr. Coburn. * * *

"Apparently acting in reliance upon these various papers, Mr. Coburn, as attorney-in-fact for the plaintiff and his wife, entered into the agreement with defendant McKay, relied upon in this suit, exhibit 'I,' which agreement was written by Mr. Coburn in pen and ink on paper following a statement of account showing the balance of $4,625.47 paid by

McKay to Kouw on the Isaac Kouw option in 1926, the agreement reading (in part) as follows:

"'*Re:* Claim Kouw v. State.

"'*Mr. Frank D. McKay:*

"'Inasmuch as you lost the above amount to Isaac Kouw on a Lake Michigan frontage option, instead of 25 per cent. of gross amount secured we will allow you to retain the above amount, $4,625.47, out of any money you may be able to settle for, provided $2,000 cash is paid to us at an early date and you split the balance with C. C. Coburn after deducting the $4,625.47 and the $2,000, said Coburn to receive $500 in any event.' * * *

"Testimony of both McKay and Coburn is substantially to the same effect that Coburn insisted that no deal would be made unless plaintiff Kouw received the first $2,000 and he, Coburn, got the next $500 before McKay would receive anything, and that anything over and above that amount of $2,500 McKay could apply on his 1926 transaction, up to the full amount he had expended, $4,625. Coburn apparently felt that he was making a very good bargain for his client. All dealings in the matter up to this point had been entirely between Mr. McKay and Mr. Coburn as Kouw's agent, and not until the matter was finally settled and a check for $8,000 received from the State payable to Isaac Kouw did Mr. Kouw and Mr. McKay meet, on September 8th.

"On September 8th the check for $8,000 from the State of Michigan was handed to Mr. Kouw for his indorsement and was indorsed by Mr. Kouw and by Mr. Coburn while all parties were in the bank. The check was cashed and the $8,000 was divided in accordance with the agreement, exhibit 'I,' Kouw receiving $2,000 cash, Coburn receiving $500, McKay taking the $4,625, and the balance being divided equally between Coburn and McKay.

"It is claimed by Mr. Coburn that he was instructed by attorney Branstrom to make any settlement or any deal he could in regard to the Kouw property and that he, Branstrom, and Coburn could settle between them what Branstrom's share would be. However, on learning of the settlement, Mr.

Branstrom apparently claimed $1,000 was coming to him out of the transaction and threatened suit against Coburn, Kouw, and even McKay. Some further transactions took place between Coburn and McKay by way of Coburn asking Mr. McKay to endeavor to settle these Coburn-Branstrom differences on the basis of the $687 which Coburn received out of the deal, but no settlement was reached and this suit is the apparent result.

"It is the claim of the plaintiff Kouw that he knew nothing about exhibit 'I,' nor anything about any $8,000 settlement until some time after he received his money. He claims he did not know for what amount the deal was closed with the State, nor the amount of the check he indorsed. The court cannot believe this statement. It is impossible to believe that a man, a real estate operator with Mr. Kouw's 20 years' experience, after endeavoring for a year to close a deal with the State, would pick up and indorse a check from the State made payable to him, without being fully aware of the amount of the check, particularly when the amount written in the check has been perforated in colored ink so that the amount of the check is clearly legible from the back of the check. Even the photostatic copy of the back of the check he indorsed clearly shows the amount stamped and perforated upon the face of the check. In addition thereto, the plaintiff had signed some receipts reciting the $8,000 amount, which clearly shows he contemplated that figure in conjunction with the orders signed by him on the same date wherein he agrees to accept $2,000 net out of the transaction.

"This court can come to no other conclusion but that Mr. Kouw was fully cognizant of the entire transaction at the time that he indorsed the $8,000 check and was satisfied to accept his $2,000 share. * * * The court is of the opinion that the contract, exhibit 'I,' entered into by Coburn with Mc-

Kay was within the authorization of the power of attorney executed by Kouw to Coburn, even had Kouw not been aware of the transaction.

"There is no proof of any fraud, of fraudulent statements or misrepresentation on the part of defendant Frank McKay in his dealings with Mr. Kouw or Mr. Kouw's attorney-in-fact, Corie C. Coburn. There is, therefore, nothing to justify the court setting aside these written agreements on the grounds of fraud.

"The only other grounds, then, upon which plaintiff could have this transaction set aside or the contract declared void would be on the grounds that the contract was void as against public policy, or that it was a contract so unconscionable that equity will treat it as void."

Continuing his opinion the trial judge gave reasons why plaintiff is not entitled to relief on either of the grounds last above suggested. We also find them devoid of merit. The record has been carefully considered and we are in full accord with the conclusion reached by the circuit judge as thus stated:

"The court, therefore, feels bound to hold that plaintiff has shown no legal grounds for setting aside or repudiating the written instrument entered into by him and his authorized agent and attorney, with his knowledge, and that there has been no fraud in the making of said instruments.

"Therefore, a decree may be entered dismissing plaintiff's bill of complaint."

Affirmed, with costs to appellees.

McDonald, C. J., and Weadock, Potter, Sharpe, Fead, Wiest, and Butzel, JJ., concurred.